**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DAVID WHITING,

       Plaintiff,

v.                                       No. CIV 08-1018 JC/LFG

RAM MOTORS, LLC, d/b/a
RAM MOTORS AUTO SALES, and
CNA SURETY COMPANY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff David Whiting's ("Whiting") Motion to Compel, filed March 19, 2009. [Doc. 24.] The motion is fully briefed and ready for resolution. [Doc. Nos. 25, 29, 31.] There is no need for an evidentiary hearing.  After careful review of the pertinent law, pleadings and attachments, the Court concludes that the Motion to Compel should be granted in part and denied in part, as explained below.

## Background

Whiting seeks damages for alleged violations of the federal Motor Vehicle Information and Cost Savings Act ("MVICSA"), New Mexico Unfair Practices Act ("UPA"), and New Mexico Vehicle Dealers Franchising Act ("MVDFA"), and for fraud. [Doc. 13, Joint Status Report ("JSR"). The parties stipulate that Whiting purchased the truck in question from Ram Motors in Albuquerque, New Mexico. [JSR, p. 2.]

Whiting asserts that he bought a 2001 Chevrolet truck from Ram Motors and that Ram Motors misrepresented to him that the truck's mileage was 81,055 miles, even though the truck had 212,318 miles when Ram Motors bought it at auction. Whiting further contends that Ram Motors either "rolled back" the odometer or replaced the odometer without disclosure of the true mileage to Whiting. In addition, Ram Motors allegedly failed to provide Whiting with the truck's title certificate even though he paid cash for the truck. Whiting claims he was not given the title certificate because Ram Motors did not want him to learn about the truck's true mileage. [JSR, p. 3.]

Ram Motors admits that the truck in question contained an original odometer reading of 212,318 miles. Ram Motors explains that the original odometer was replaced with an odometer, which read 81,055 miles when sold to Whiting. [Doc. 29, p. 1.] Ram Motors claims, however, that it substantially complied with all disclosure requirements by telling Whiting at the time of purchase that the odometer reading was not a representation of true mileage or by giving Whiting a document that reflected the odometer reading was not correct. [Doc. 29, p. 2.] According to Ram Motors, Whiting did not know when he filed this lawsuit why the odometer was changed and he incorrectly alleged fraud on the part of Defendant. Ram Motors argues in its brief that it replaced the original odometer because "the cluster was broken so the mileage reading certified as accurate by the prior owner was not accurate, and Defendants could not rely on that Certification or pass it on [sic] the customer as accurate." [Doc. 29, p. 2.]

Whiting denies that Ram Motors told him about the mileage discrepancy and denies Ram Motors gave him the title certificate. [Doc. 25, pp. 1-2.]

## **Motion to Compel**

Whiting's Motion to Compel concerns a single document request served on Ram Motors. The request asked for "all title certificates and odometer disclosures, for both your purchase of the vehicle and for your resale" for every vehicle Ram Motors sold between July 1, 2006 to July 1, 2008. [Doc. 25, Ex. A.] In response, Ram Motors objected, contending that the request was "overly broad, immaterial, irrelevant and not calculated to lead to admissible evidence." [Doc. 25, Ex. A.]

Whiting contends the request is relevant to rebut Ram Motors' defense that it told him about the mileage discrepancy. In addition, it is relevant to overcome Ram Motors' assertion that it gave Whiting the title certificate at the time of sale. According to Whiting, the proper procedure would have been for Ram Motors to have made the mileage disclosure on the back of the title certificate and to have Whiting sign it. [Doc. 25, p. 2.] Whiting notes that Ram Motors produced a separate document which it claims Whiting signed stating he received the original title certificate. But, the title certificate does not have Whiting's signature and Whiting denies receipt of the certificate.

Whiting explains that he seeks the requested documents to determine if there were other instances Ram Motors replaced odometers with incorrect mileage for vehicles it sold. If so, Whiting intends to contact these other customers to see if Ram Motors told them about the mileage discrepancy.

In addition, Whiting argues that the requested evidence is relevant to show intent because Whiting must show that Ram Motors acted "knowingly" under the UPA and that it acted with the intent to deceive to prove fraud. Whiting contends that the requested information is not impermissible Rule 404(b) evidence. Instead, it is potential evidence of similar illegal behavior to prove intent. Whiting also asserts that the requested information is necessary to support an award

of punitive damages, because Whiting must demonstrate that Defendant acted willfully and maliciously.

Finally, Whiting argues that the request is not overly broad as he narrowly tailored his request for a period of two years, and he did not ask for all purchase and sale documents.  He seeks only title certificates and odometer disclosures for Ram Motors' purchase of vehicles and its resale of those vehicles.

Ram Motors claims that the requested information is impermissible Rule 404(b) character evidence.  Ram Motors further argues that "[i]t is common sense that odometers on older or high-mileage vehicles may become worn or even non-functioning, and in need of repair or replacement." In this case, the vehicle arrived with over 200,000 miles on it, and could easily have fallen into that category."   [Doc. 29, p. 3.] Ram Motors apparently admits that the requested documents would demonstrate that a high number of odometers were replaced in older or high-mileage vehicles, but argues that replacement of odometers has no correlation to allegations of fraud. [Id.] Ram Motors asserts that there would be no way to assess innocent or fraudulent conduct on its part without reviewing "the totality of circumstances in regard to odometer replacement." [Doc. 29, pp. 3-4.]

Ram Motors also contends that the discovery sought is a fishing expedition and "would place a hardship on the Defendants' retrieval" and that the prejudicial basis of the requested information would outweigh its probative value.

In the reply, Whiting argues, in part, that the requested documentation would not merely reveal the number of odometers replaced.  The request also seeks the odometer disclosures to customers to determine whether Ram Motors failed to disclose the true mileage to the purchaser, after an odometer was repaired or replaced.  Such evidence, according to Whiting, is highly relevant to a request for punitive damages.

## Legal Standard

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at the trial so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Courts have determined that the scope of discovery is broad.  E.E.O.C. v. Piñon, et al., 2007 WL 1302578, *3 (D.N.M. Apr. 10, 2007) (unpublished opinion) (*citing* Burks v. Oklahoma Pub. Co., 81 F.3d 975, 981 (10th Cir. 1996) ("A plaintiff may be allowed 'extensive' discovery in order to prove his or her case.'").

While the federal rules provide for broad and liberal discovery, discovery is not without limits.  *See* Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995) (employment discrimination case) (quotation omitted).  A district court is not required "to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. Jul. 22, 2002) (unpublished opinion).

Indeed, the Federal Rules of Civil Procedure were amended in 2000 with the intent to narrow discovery and to avoid "fishing expeditions."  "The amendment [was] designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Advisory Committee Notes, 2000 Amendments, Rule 26(b)(1).  "The rule change signals to the court that it has authority to confine discovery to the claims and defenses . . . and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Id.

In addition, the federal rules specifically mandate that a court limit the extent of discovery if it determines that:

> the burden or expense of the proposed discovery outweighs its likely
> benefit, considering the needs of the case, the amount in controversy,
> the parties' resources, the importance of the issues at stake in the
> action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii).  In other words, the federal rules require a court to balance one

party's right of discovery with the opposing party's right to be free from intrusive and burdensome

discovery.  *See, e.g.,* Koch v. Koch Industries, Inc., 203 F. 3d 1202, 1238 (10th Cir.), *cert. denied*,

531 U.S. 926 (2000); Burka v. United States Dep't of Health and Human Servs., 87 F.3d 508, 517

(D.C.Cir. 1996).  *See also* Wright, Miller & Marcus, Federal Practice & Procedure 2d § 2008.1

(1994) (discussing concept of proportionality with respect to discovery requests).

## Analysis

The Court determines that Whiting demonstrated the requested discovery is relevant to his

claims of fraud and request for punitive damages.  While Ram Motors initially objected to the

document request on grounds of relevancy, its opposition to the motion to compel rarely, if ever,

raises a dispute as to relevancy.  Instead, Ram Motors' argues the admissibility of Rule 404(b)

character evidence which is not the pertinent inquiry here.  *See* Martinez v. Cornell Corrections of

Texas, 229 F.R.D. 215, 218 (D.N.M. 2005) (noting that "relevancy in the discovery context is

broader than in the context of admissibility . . . .").  Indeed, Ram Motors' opposition brief could be

read to mean that it now concedes the requested information has probative value and is relevant.

> There is no point in taking the trouble to ascertain [sic] the
> information sought in this discovery because the prejudicial affect
> [sic] of this would outweigh [sic] probative value as evidence.

 [Doc. 29, p. 4.]

> The discovery sought would place a hardship on the Defendants'
> retrieval and the prejudicial basis would outweigh the probative value
> as shown in this case and the discovery would not be helpful.

[Doc. 29, p. 9.]

Here, some of the sought-after information regarding title certificates and odometer disclosures for vehicles Ram Motors purchased and re-sold is relevant to show what Ram Motors' regular procedures are for disclosing actual mileage and titles to purchasers, as well as the company's regular practices concerning disclosures of true mileage when the odometer was changed or replaced. The requested discovery is reasonably calculated to lead to the discovery of information that could demonstrate whether or not Ram Motors acted intentionally or with intent to deceive with respect to making the required odometer disclosures. If Ram Motors acted repeatedly in prohibited conduct concerning odometer disclosures, the sought-after information could provide relevant support for a claim of punitive damages. *See* <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 577 (1996) (evidence that a defendant repeatedly engaged in prohibited conduct would provide relevant support for punitive damage claim); <u>Salmeron v. Highlands Ford Sales, Inc.</u>, 220 F.R.D. 667, 670-71 (D.N.M. 2003) (evidence that car dealership failed to make certain disclosures to other customers could enable the plaintiff to establish that defendant acted intentionally or that its actions were part of a pattern or practice); <u>Aken v. Plains Electric Generation & Transmission Co-op, Inc.</u>, 132 N.M. 401, 409 (2002) (citing <u>BMW</u> for proposition that "evidence of repeated engagement in prohibited conduct knowing or suspecting knowing or suspecting it is unlawful is relevant support for a substantial [punitive damages] award").

Ram Motors also failed to show how the document request is over broad even though it raised the objection in its initial response to the request. In addition, it did not show how the

document request is unduly burdensome.[1]   The party resisting a discovery request based on

overbreadth or undue burden bears the burden to support the objections.  Swackhammer v. Sprint

Corp. PCS, 225 F.R.D. 658, 661-62, 666 (D. Kan. 2004).  The Court does not excuse compliance

with a discovery request for relevant information based on nothing more than "a cry of unduly

burdensome."  E.E.O.C. v. Citicorp Diners Corp., 985 F.2d 1036, 1040 (10th Cir. 1993) (discussing

discovery principles in relation to subpoena in employment matter).   "The objecting party must

show specifically how, despite the broad and liberal construction afforded the federal discovery

rules, each question is overly broad, burdensome, or oppressive by submitting affidavit or offering

evidence revealing the nature of the burden."  Sonnino v. Univ. of Kan. Hosp. Auth., 221 F.R.D.

661, 670-71 (D. Kan. 2004); Allianz Ins. Co. v. Surface Specialties, Inc., No. 03-2470-CM-DJW,

2005 WL 44534, *2 (D. Kan. Jan. 7, 2005) (unpublished opinion) (internal citations omitted);

Nelson v. Farm, Inc., 2009 WL 939123, *4 (D. Kan. Apr. 6, 2009) (unpublished opinion) (internal

citations omitted) (resisting party must "provide sufficient detail and explanation about the nature

of the burden in terms of time, money and procedure which would be required to produce the

requested documents." )

        Even though relevant, the Court still must address concerns of proportionality.  In other

words, the Court must determine if the burden or expense of the proposed discovery outweighs its

likely benefit after considering the needs of the case, amount in controversy, the parties' resources

and the importance of the issues at stake in the action and the importance of the discovery in

---

[1]Ram Motors did not raise the objection of undue burden in its initial response to the request, and Whiting
argues any such objection is now waived.  The Court agrees.  Moreover, as stated above, Ram Motors did not
demonstrate how the requested discovery was unduly burdensome.

resolving those issues.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  This is true whether the matter is raised by motion or the Court acts on its own.  Id.

This discovery dispute is not the same as that which was raised and addressed in Salmeron. For example, it is distinguishable in that the plaintiff, in Salmeron, asked the car dealership for only six months of information as opposed to the two years of documents requested here.  In addition, the car dealership here is located in Albuquerque, the largest city in New Mexico, while the car dealership in Salmeron was located in a small community, where dealerships might be more likely to entertain a significant amount of customer loyalty and repeat business.  In Salmeron, the defendant car dealership provided specific information and data as to why the discovery request was over broad or unduly burdensome, unlike the circumstances here.  The Court concluded, based on the specific circumstances of Salmeron, that the plaintiff's need for address and telephone information of the car dealership's prior customers was outweighed by the possibility of harm to the small-town dealership.  Thus, the Court initially limited the request for discovery through the use of a questionnaire that was mailed to prior customers.

The circumstances of this case include Ram Motors' admission that it changed the odometer in the vehicle sold to Whiting to read over 100,000 miles less than the true mileage.  Ram Motors provided no persuasive argument or evidence that it actually supplied certification of this fact to the buyer.  In addition, Ram Motors admits that the sought-after information will include a "high-number" of odometers that it changed or replaced. [Doc. 29, p. 3.]  In its opposition brief, Ram Motors speculates that odometers in older or high-mileage vehicles (for which Whiting seeks the information) "could easily have fallen into that category" of having worn or even non-functioning odometers needing replacement. [Doc. 29, p. 3.]   The fact that Ram Motors  repaired or replaced

the odometers in some of the older or high-mileage vehicles is not the point.  The question is whether it disclosed to the buyer information of changed mileage on the odometers.

Ram Motors further argues that "[t]here is no way to tell whether any odometer replacement in other vehicles by the Defendants was innocent of fraudulent, and [sic] without reviewing the totality of circumstances in regard to odometer replacement.  There is no point in taking the trouble . . . ." [Doc. 29, pp. 3-4.] Thus, Ram Motors does not expressly deny that its actions may have been or were fraudulent as to the disclosure of true mileage of vehicles in cases where it replaced odometers.

Here, Ram Motors did not even present evidence to demonstrate there would be significant burden, harm or expense in producing the requested information.  After balancing the needs of the parties with the possible burdens or expenses of the proposed discovery, the Court concludes that it will grant the motion to compel, with limitations.  The Court sets limitations because of advisory language in the amendments to the federal rules requiring the Court to participate more actively in regulating the breadth of sweeping or contentious discovery and to ensure that discovery requests are not an attempt to develop new claims not already identified in the pleadings.  In other words, while the requested discovery sought by Whiting is relevant to proving his claims, it also could be misused to troll the waters for developing new claims by different individuals.  The federal rules do not sanction such potential misuse of information.  Thus, the Court will limit the discovery requests as described below.

Moreover, the concerns earlier expressed by the Court in <u>Salmeron</u> remain present here.  Car dealers rely on repeat business.  Customer loyalty can result in one successful sale being multiplied over the years, and a dealer will often sell more than one vehicle to a customer.  Thus, the loss of a single customer can translate into tens of thousands of dollars of future losses.

The Court is concerned that one sure way of hurting a car dealer's reputation and severing customer loyalty and future relations is to approach a customer who has not asserted any complaint against a dealer, advise him or her that the dealership is under investigation for fraud or violation of the UPA, and seek to obtain information about that customer's prior dealings with the car dealership.  That contact alone could ensure the loss of any future sales to that customer.

Thus, the Court restricts the request for information to a period of one year, from July 1, 2007 to July 1, 2008.  In addition, the Court limits the request to all title certificates and odometer disclosures for vehicles that Ram Motors purchased and then re-sold, ***with odometers that Ram Motors changed, repaired or replaced.***  In other words, if Ram Motors did not alter the odometer reading in any way in vehicles it purchased and resold during this period, the information need not be produced.  The Court further restricts the discovery request by first requiring Ram Motors to provide the Court with all of the requested information for this period for an *in camera* inspection.

The *in camera* inspection is consistent with the Court's responsibility to balance the needs of the party requesting the information with the harm, burden or difficulty that may befall the opposing party by providing the information.  *See* Fed. R. Civ. P. 26(b)(2)(C).  The *in camera* approach reduces the possibility that all former customers will be contacted and limits the discovery of information to matters relevant under Rule 26(b).

Accordingly, Ram Motors should present to the Court the title certificates and odometer disclosures for vehicles the dealership purchased and then resold (with changed, repaired or replaced odometers), thereby demonstrating whether disclosures of altered odometer readings were made to the customers.  To the extent that additional circumstances are required to make this determination, as argued by Ram Motors, the additional information should be made available to the Court as well for its *in camera* inspection.

11

After the *in camera* review, the Court will determine what information should be provided to Whiting, including whether certain personal information of customers should be redacted and whether full name and address information should be made available to Whiting.  To the extent that private contact information of Ram Motors' customers is revealed to Whiting, an appropriate Order of Confidentiality will be prepared and submitted to the Court for approval and filing.

IT IS THEREFORE ORDERED that Mr. Whiting's motion to compel is granted in part and denied in part as described herein.  Ram Motors' production of documents to the Court for an *in camera* inspection should be made no later than twenty (20) days after entry of this Order.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge